Okay, our final case this morning for argument is 20-1152, United States v. Carr, and Mr. Wysoki, you may proceed for the appellate. Thank you and good morning, Your Honor. May it please the Court, Jason Wysoki, CJA counsel for Heather Carr. In expanding a compassionate release under the First Step Act, Congress, elected by the should be shown compassion. We should not allow compassion be stripped from the analysis of compassionate release petitions and allow courts to define extraordinary and compelling circumstances so narrowly that despite Congress's clear directive, the results of prisoners seeking compassionate release is no different than the results of the Bureau of Prisons' non-existent efforts to seek compassionate release. Here, Congress granted the judiciary the great power to expand compassionate release because with lifetime appointment, it allows us to do that which is politically difficult if not impossible, show compassion to criminals. And this case is a perfect example of how easily we can strip compassion out of the analysis, how that leads to more suffering and trauma that only serves to perpetuate the poverty-to-prison cycle and how being compassionate can reverse that cycle. In this case, the district court relied on, cited to, and deemed it cabined by the Sentencing Guidelines Section 1B, 1.13's definition of extraordinary and compelling. But this court should follow the lead of the Second, Fourth, Seventh, and Sixth Circuits and hold that that section of the guidelines is not only not binding, but not applicable. Indeed, that, the commission's comments, the application notes, which I guess I equate to the application notes of the civil rules or the criminal rules, are obviously not binding and they are particularly inapplicable because those application notes were created long before the First Step Act expanded compassionate release to allow a prisoner to petition a court. Mr. Visoki, if we agree with that proposition, then is there any limit or constraint on the district court's discretion in applying an extraordinary and compelling application? I mean, is it abusive discretion or could it be no reason, whatever reason? Is there anything that gives guidance? There must be something out there that would be an abusive discretion. Why isn't the guideline, even if it's not formally applicable, a pretty good road map for guidance to a district court's discretion here? Sure. Well, I think the guideline itself could be looked at by a district court, much like the traditional guidelines, no longer, sentencing guidelines, no longer mandatory can be looked at. However, I don't think this court or any court should, in a compassionate release context, deem it as effectually de facto reasonable or a de facto non-abusive discretion to simply follow that road map, as Your Honor put it. And the reason being is that compassionate release is a fundamentally different analysis than the sentencing guidelines. Obviously, the goal of sentencing multiple defendants across multiple jurisdictions is to create some consistency so that the sentence for one crime in Colorado is the same as the sentence for the same crime in New York. Whereas, compassionate release, by its very definition, is a case-by-case analysis based on the unique circumstances of each prisoner. So the district court's discretion is confined by the plain language of extraordinary and compelling. And the plain language and meaning of extraordinary and compelling, obviously, is not limited to the definitions as set forth by the commission, which is essentially as applicable to this case with regard to the family circumstances, that the caregiver is dead or physically incapacitated. Here, there are, I think... The government suggested that the district court didn't necessarily believe that it was bound by the guideline language, and therefore, any error here would be harmless. What's your response to that argument? Yeah, well, my response is I think that's incorrect. I think one need only look at the district court's order and opinion, in which it cites explicitly and relies on Section 1B1.13. And it says further that, quote, "...hardship endured by the primary caregiver is not an extraordinary and compelling reason justifying a modification of Carr's sentence." The court essentially did no analysis of all of the evidence that Ms. Carr mustered, including two issues that I think are something that would, if considered by the court, would have dissuaded if it didn't believe that it was limited to finding that the family circumstances require death or physical incapacitation. Number one is Ms. Carr's extraordinary efforts while imprisoned to demonstrate not only remorse, but also to improve herself, with 40 different certificates being asked by the prison to come back because she's been such a model prisoner to help instruct people. And number two, as raised in her petition and as discussed in our opening brief, that had she actually been a drug addict and been able to therefore participate in drug rehabilitation classes at prison, her sentence would have been reduced by approximately, if not at least, one year, meaning she would probably be out of prison already. So what is in effect happening in this case? Again, a case-by-case analysis for compassionate relief is that she is being punished for not being a drug addict, which demonstrates that the court did not actually exercise its discretion. The court simply said, well, Ariana is not dead and she's not physically incapacitated, despite the clear evidence that when Ms. Carr was sentenced, her children, through her older daughter, Ariana, had a very, at least potentially, stable living environment, including living with Ariana and her then-husband in a single-family home, whereas after she was sentenced as a result of her youngest son's severe autism and learning disabilities, that marital relationship completely fell apart, requiring Ariana to move into an apartment with her four siblings, a completely different scenario that was unforeseeable at the time of the sentencing, the original sentencing. And so what this case and what every compassionate relief case must consider is that arbitrary or quote-unquote objective tests simply don't fit. And they don't fit because compassionate release is not designed to be something that is simply tested like the Lemon test, for example. You think the court has to march through the 3553A factors during this process? I think that in a case-by-case basis, the best practice is to, of course, do so. And certainly in this case, the court absolutely should have. Once this court clarifies, as we think it should, that Section 1B1.13 is not binding and is not applicable, then in a case just like this, in fact, on remand, what the district court should do in this case is say, all right, is this an extraordinary and compelling reason? One of the ways to determine that is to look at the 3553A factors. What has Ms. Carr done to rehabilitate herself? Is she a continuing danger? Has the sentence that was imposed and thus has already been served, served its purpose to deter? And then look at why is Ms. Carr asking for compassionate release? Is it because she just simply wants to get out of prison early? No, it is so that we do not perpetuate the cycle of poverty to prison. Her two youngest minor children are in jeopardy, truly, particularly her youngest son, who could very well end up in a foster system, which is unlikely to be as good of an outcome as Ms. Carr, particularly Ms. Carr's backstory, which is, you know, laid out both in our petition and in our brief, that despite being a runaway at age 14 and pregnant at age 17, she could have fallen into the trap that so many people unfortunately do and turn to a life of poverty. Let me stop you there. That's sort of making the pitch that you need to make below. So it sounds to me like you're advocating for the very broad type of information to be considered by the district court, that almost anything should be able to be considered by the district court in making a determination of whether the circumstances are extraordinary and compelling. I mean, is that fair? The short answer, Your Honor, is if I understand your question, I think yes. Okay. Let me stop you for a minute there. I just want to narrow you down. So my concern is, if you advocate for that kind of discretion, how can we ever review it? How can we ever determine whether the district courts made an error if the criteria that they can consider is almost unlimited? And if that's the case, it seems like the district court could also look at 1B1.13 and say, you know what? This seems like a good definition to me. I think I'm just going to use that one. Yes. So Your Honor's question was, what could the court consider?  So just to use a sort of off-the-top hypothetical, so if somebody petitions for a compassionate release and says, the court should consider that, you know, I'm a huge fan of Star Wars and the new Star Wars movie is coming out, and therefore I should be released. Can the court consider it? Of course the court could consider it. Would that equate to extraordinary and compelling reasons? Of course not. So what can be considered versus what constitutes extraordinary and compelling reasons are not mutually exclusive. How about my mom is 65 and it really makes her tired to keep these kids, but she's indicated that she's willing to do so, and I'm worried that the stress is going to age her quickly. And so I should be let out to take care of these kids so she doesn't have to do it anymore. Sure. So in that situation, the court could consider that. And then if the court said that's not sufficient, that certainly is not extraordinary and compelling, this court would review that determination for an abuse of discretion and could easily say that is not an abuse of discretion because somebody simply being tired but being more than willing and otherwise able is not extraordinary and compelling. But that's not the situation we have here. Here we have a woman who was thrust into the care of two minor siblings who previously had a stable relationship that dissolved as a result of that burden. And so what a court can and should do is look at what the prisoner brings forth and determine whether or not it's extraordinary and compelling. And I don't think we have to go as loosey-goosey as Justice Stewart saying obscenity and pornography. I know it when I see it. Because what is allowed to be requested, yes, the court can consider 1B1.13, but until the Sentencing Commission actually provides some guidance after the First Step Act, that information, that guideline is particularly inapplicable. If the court doesn't mind, I would like to preserve the remainder of my time for rebuttal. Thank you, counsel. Let's hear from the government. Good morning, your honors. Counsel, may it please the court, Michael Johnson for the United States. I'd like to start by addressing Ms. Carr's claim that the district court erred by quote 1B1.13 of the guidelines. This case need not determine whether or not 1B1.13 is advisory or it's binding, and that is because this case really does not present the issue that is now before a separate panel of this court in the Mau Mau case. This case does not present a Mau Mau issue. The district court here appeared to contemplate the possibility of other circumstances beyond those that were set forth in 1B1.13, but based on the claim that Ms. Carr was making in her motion for compassionate release, the district court determined as a matter of discretion to go to the policy statement 1B1.13 to resolve Ms. Carr's claim based on the specific assertion she was making that she should be provided compassionate release based on her family's circumstances. So, this court can... Don't you think the district court considered itself limited by the 1.13 definition? It doesn't appear so, Your Honor, and the best reading of the district court's order suggests that the court thought that the policy statement was merely advisory. The court began its consideration of the merits of Ms. Carr's compassionate release motion by providing in a somewhat lengthy paragraph the District of Utah's decision in Mau Mau and pointing out that a majority of district courts that have looked at the issue have ruled that they're not bound by the sentencing commission's policy statement. Best reading of the district court's decision here, given its reference to Mau Mau in that paragraph, is that the court thought that section 1B1.13 was advisory because otherwise what was the point of citing Mau Mau in that initial paragraph? If the court thought it was bound by the policy statement, then why did it include the paragraph? And if it thought it was bound by the paragraph, then after citing Mau Mau in that paragraph, why didn't the court say the Mau Mau district court was wrong? But the district court didn't follow up after that paragraph, which cited Mau Mau, the district court didn't follow up with the statement that the Mau Mau district court was wrong. Rather, the district court proceeded to address Ms. Carr's motion based on the specific claim she had raised in her motion, which is that her family circumstances demonstrated extraordinary compelling reasons justifying compassionate release. To me, it's not clear what the district court did after it cited Mau Mau. It doesn't specifically say, and therefore I'm following Mau Mau and the other courts that have said I'm not bound. And it doesn't say, despite Mau Mau, I am bound. So it's not, I mean, it's not at all clear to me which way the district court was going here. The best reading we submit, Your Honor, that we have come to after reading the court order, is that the court cited that paragraph as a basis for a determination that it could go beyond the policy statement. It cited that paragraph and it cited Mau Mau as support for going beyond the policy statement. And that was the premise, the framework behind its analysis of the claim brought in the motion that Ms. Carr filed with the district court. In a perfect world, the district court would have explained with more clarity why it was citing Mau Mau, why it included that paragraph at the beginning of its merits discussion. Well, what causes some of my confusion is right after citing Mau Mau with the explanatory parenthetical, the court says Carr has not established that she is eligible for compassionate release and modification of her sentence under the family circumstances exception or for other reasons. And then it cites C-U-S-S-G section 1B1.13. So it seems like it's relying on that definition. It appears to have relied on the definition to resolve Ms. Carr's motion. That is correct. But it doesn't suggest that the court was of the opinion that it lacked the discretion to go beyond what was set forth in the policy statement. And the court statement for other reasons that is set forth in the court's order suggests that the court may have included that statement for other reasons as a way of indicating that it was not going to rule in Ms. Carr's favor for reasons other than those set forth in 1B1.13. It's not clear what the court meant by the phrase for other reasons, but a plausible reading of that is that the court meant for reasons other than those set forth in 1B1.13. I thought the court was relying on talking about the separate ground other than family circumstances that is called other reasons. In other words, comment note 1D. Yeah, let me pull it up. I'm sorry. Yes. And in the briefing before us, there is some suggestion that that's a fallback position here for Ms. Carr. If she doesn't fall in family circumstances, then we should look at it under other reasons. And the court, by citing other reasons, indicated that it was not looking solely at family circumstances. If the court meant for other reasons that it was referring to comment note 1D, that also suggested that the court was going beyond what was merely set forth in the motion. And the motion focused solely on family circumstances in its request for relief based on extraordinary and compelling reasons. Your position here is that the defendant filed motions, the court has to follow the 1.13 guidance that is bound by that? Yes, Your Honor. That's the government's position. And in this case, does the record reveal if Ms. Carr asked the Bureau of Prisons to file a supportive motion for compassionate release? I don't see anything in the record indicating that she asked the director of the Bureau of Prisons to file a motion on her behalf. She filed her own motion following the passage of the First Step Act. And nothing in the record, to my knowledge, indicates that she asked the director to file a motion on her behalf. What's the status of her sentence? How much time remains on her sentence? I believe she received an eight-year sentence, and she has not yet served half of her sentence. Do you know when she would be eligible for release? I don't have the exact date, Your Honor. Given the other factors that might be at play here? I don't have a date in mind by which she would be released from prison at this point. I could determine that and then submit a 28-J letter to the court with that information. Maybe Mr. Wysocki can clear it up during his rebuttal. One point I wanted to raise relating to Ms. Carr's motion for compassionate release is that she set forth the family circumstances reason as the basis for her seeking relief based on extraordinary and compelling reasons. During Ms. Carr's argument this morning, counsel stated that the district court failed to consider two issues. Number one, Ms. Carr's efforts to show remorse while in prison, and number two, that if Ms. Carr had been a drug addict, her sentence would have been reduced. Neither of those considerations were raised in her motion for compassionate release that she filed to the district court. So she didn't exhaust her remedies, and she didn't preserve the issue by raising it in her motion below. All she raised below in her motion for compassionate release as to her request for release based on extraordinary and compelling reasons is that she had shown her family's circumstances constitute an extraordinary and compelling reason. We submit that because this panel need not wait for a decision from the Mal-Mal panel to resolve this appeal, because a fair reading of the district court's decision suggests that the court did indicate that the policy statement was advisory, that this panel should therefore defer to the Mal-Mal panel. In Mal-Mal, it's outcome determinative as to whether the policy statement is binding or not. Here it isn't, for the reasons that we've stated, that the best reading of the district court's decision is that the order suggests that the court did believe that 1B1.13 was advisory, that's why it cited Mal-Mal. But the court nevertheless proceeded to resolve the case based on her family's circumstances assertion. And we cited an 11th Circuit decision in a 20HA letter that we filed. The 11th Circuit decision from Harris supports our view that this court doesn't have to decide the question of whether 1B1.13 is binding or not in order to resolve this appeal. The court had asked whether or not, Judge Timkovich had asked whether or not the district court should have marched through the 3553A factors. We submit that the district court was not required to go through the 3553A factors. And there are two reasons for that. First, the statute is set up kind of as a two-part analysis. The district courts are asked first to determine if the move-in is eligible for release. And then after making a finding that the move-in is eligible for release, then the district court looks to whether the defendant should in fact be released. So the way that 3582C1A is structured, it seems to say that if the defendant shows an extraordinary compelling reason that's consistent with the applicable policy statement, that showing makes the defendant eligible for release. And then once the defendant is shown to be eligible, then the district court would look at the 3553A factors to determine whether in fact the defendant should be released. And as we've argued, the district court shouldn't be required to resolve the 3553A issue if the court doesn't initially determine that the defendant is eligible for release under that first analysis. We cited a decision by the Sixth Circuit, Navarro, in a 28-J letter where the Sixth Circuit held that district courts may deny compassionate release motions when any of the prerequisites listed in 3582C1A is lacking and that the court need not address the others. If there are no more questions by the panel, I would conclude by saying that this court should defer to the Mau Mau panel on the underlying issue of whether or not the policy statement is binding or merely advisory. That issue has been fully briefed and argued in Mau Mau. And unlike in this case, the Carr case, it actually matters to the outcome of Mau Mau. Here, it doesn't matter because, as we've argued, the district court's reading can fairly demonstrate that the district court was of the view that it had discretion that the policy statement was advisory, but the court looked at the policy statement because that was the best mechanism to resolve Ms. Carr's specific claim that her family's circumstances merited compassionate release. Thank you. Thank you, counsel. I have some rebuttal from Mr. Wysoki. You're on. You're muted. There you go. I'd like to begin by correcting two errors discussed in the government's presentation. Number one, Ms. Carr did raise the issue of not getting the benefit of being a drug addict in her motion. That's at page 342 of the record. Number two, her sentence was 57 months, four years and nine months. She has currently served 37 months, three years and one month, and has approximately one year and eight months remaining on her sentence. I would like to turn to Jim Hughes' questions to the government with regard to the district court's analysis. I can appreciate Your Honor's confusion somewhat with regard to what the district court was doing, but I think a close look at the court's order gives some clarification. Immediately after discussing Mau Mau, the court, as Your Honor pointed out, cites to and relies on 1B1.13. The court then says Ms. Brown, Carr's eldest daughter, quote, is not incapacitated or deceased. That language comes directly from the commission's comment notes, and is the court demonstrating it believes the definition of extraordinary and compelling is limited by the commission's comment. Further on in the order, the court says, this is on page 449 of the record, that Ms. The record does not show that Ms. Brown is incapable of providing care, which again comes from the sentencing commission. I see my time has expired. Thank you, counsel. We appreciate the arguments. I think we understand your presentations. You are excused and your case shall be submitted.